UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

Demetrius Gohre,

    Plaintiff, Pro se,

V.                                                                   Case no. 22-CV-1403

Chad E. Boyack, Et Al.

    Defendants.

### RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Demetrius Gohre, who appears pro-se, hereby submits the following in support of Plaintiff's motion requesting denial of Defendants' motion for summary judgment

### I. Introduction

On October 25th, 2017, while working inside Gifted Hands carwash at 3001 w. Burleigh as an automotive repair technician, Mr. Gohre took a break from work to walk to the gas station on 27th and Burleigh for a pack of cigarettes. On his walk, while on the phone with his brother in-law, Alessandro Haynes, Gohre noticed 5-6 police cars sitting on the south corner of W. Burleigh and 30th street in an empty lot. Gohre didn't pay any special attention to this as it is a regular occurrence in the area and continued to walk to the store. On his way back from the store, his cell phone to his ear with his left hand and a lit cigarette in his right, Gohre turned right (north) on 30th street and was heading back



to the entrance of Gifted Hands car wash when he was approached by two officers (Chad Boyack and Anthony Milone) in a squad car. The officer driving the squad car (Boyack) called to Gohre from inside the squad car "Can I ask you some questions?" to which Gohre replied "no, I work in this building, I have to get back to work" and continued to walk towards the entrance of the Gifted Hands car wash building. In response to this, Chad Boyack exited the squad car, called on his walkie, un-holstered his weapon, and started to approach Gohre. Gohre, seeing a person approaching him with a firearm drawn, put his hands in the air and told the person he was on the phone with (Alessandro Haynes) "Bro, I'm finna die. The police finna kill me" As the officer continued to approach Gohre, Gohre told the officer "You don't have permission to search me" More officers arrived at the scene at which point Gohre was body slammed to the ground by one of the officers behind him and the officers began to kick and punch him while yelling "Stop resisting" and putting Gohre in handcuffs. One officer, Chad Boyack, was kneeled down with his knee in Gohre's neck. Gohre asked the officers "What did I do?" to which Boyack responded "You looked at us, that's reason enough" one of the officers who was not busy assaulting Gohre called out from the grassy area in front of Gifted Hands "He didn't throw anything over here" at which point the assault stopped. Another officer walked inside Gifted Hands car wash and came out with an employee and asked him "Does this man work here?" to which the employee responded "Yeah, he paints cars in the back" he was then told to go back in the building. Officers then took Gohre's wallet from his back pocket and did a wanted check on his name. When it came back clean, Gohre was put in the back of a squad car where he was transported to district 5. At district 5 Gohre was given a damp towel to wipe the dirt off his face and then was made to take booking photos and was finger printed. The officers made Gohre sit at the district on a bench for hours and was then let go.

## II. Standard of Review

In response to a properly supported motion for summary judgment the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial" *Siegel v. Shell oil co.*, 612 F.3d 932,937



(7th cir.2010) In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health&Hosps. Corp.*, 892 F.3d 887,893 (7th cir.2018), *E.E.O.C v. Sears, Roebuck&Co.*, 233 F.3d 432, 437 (7th cir. 2000)

"Qualified immunity only protects government officials from liability when their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about" Alicia v. Thomas, 815 F.3d 291 (7th cir.)

### III. Arguments.

A. Reasonable suspicion did not exist for officers to initiate Terry stop.

"A law enforcement officer can execute an investigatory stop when officer has reasonable suspicion that a crime may be afoot" *Gentry v. Sevier*, 579 F.3d 838 (7th Cir. 2010) "A reasonable suspicion is more than a hunch"

Gohre was doing nothing more than walking down the street when he was approached by officers. *Terry v. Ohio*, 392 U.S 1 (1968) "Defendant was entitled to protection of 4th amendment as he walked down city street" Officer Boyack asked Gohre if he could ask him some questions and Gohre told him no, he (Gohre) had to get back to work. At this point Gohre had done nothing wrong or suspicious and was therefore not obligated to answer any of Boyack's questions. *Gentry*, 597 F.3d 838 "An officer can approach individuals on the street or other public places and put questions to them if they are willing to listen"

When officer Boyack exited his vehicle, drew his weapon and approached Gohre, the initial seizure occurred. *Terry*, 392 U.S 1 "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" Gohre pulled away from Boyack and began backing up as he feared for his life. Gohre's pulling away from Boyack could not have been seen as resisting because Gohre was not, and did not believe that he was being lawfully stopped. *State v. Caldwell*, (App.1990) 454 N.W.2d "to convict defendant of obstructing officer, jury must find... defendant obstructed officer knowingly, that is, defendant knew or believed that



he or she was obstructing officer while officer was acting in his or her official capacity and with lawful authority", *State v. Lossman* (1984) 348 N.W.2d 159, 118 Wis.2d 526 "knowledge that officer was acting with lawful authority when accused resisted or obstructed officer is an essential element of offense of resisting or obstructing an officer", *State v. Ferguson*, (2009) 767 N.W.2d 187, 317 Wis.2d 586 " 'lawful authority', under statue prohibiting obstruction of an officer, describes whether the officer's actions are conducted in accordance with the law" And, because the initial stop was illegal, any search or continued seizure as a result there of was also illegal

B. The officers used excessive force

"All excessive force claims against law enforcement officers are analyzed under the fourth amendment's 'objective reasonableness' standard" *McDonald v. Haskins*, 966 F.2d 292, 293 (7th cir. 1992) "To establish a fourth amendment violation of 1983, Plaintiffs must show 1) that there was a seizure, and if so, 2) whether that seizure was objectively unreasonable." *Campbell v. White*, 916 F.2d 421, 423 (7th cit. 1990)

Here, Gohre was illegally stopped, searched, seized, and then assaulted. Because the initial stop was illegal, ANY force used pursuant to that stop would be unreasonable and therefore excessive. Not withstanding, Gohre was not just handcuffed and patted down, Gohre was approached by an officer with a firearm, body slammed, punched, kicked, and had an officer (Boyack) kneel down upon his neck.

C. Summary judgment is not appropriate

In response to a properly supported motion for summary judgment the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial" *Siegel v. Shell Oil Co.*, 612 F.3d 932,937 (7th cir.2010) In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health&Hosps. Corp.*, 892 F.3d 887,893 (7th cir.2018), *E.E.O.C v. Sears, Roebuck&Co.*, 233 F.3d 432, 437 (7th cir. 2000)



What the defendants are asking the jury to believe is that a man (Gohre) walked 3 city blocks, crossed one main street and then two more high traffic streets two times all while looking down at the ground and never seeing the 5-6 police cars parked on the corner that he walked right pass, within about ten yards and directly in his line of sight. Next, the defendants want the jury to believe that the man walked completely pass the building he was going in, looked up, saw the police for the first time, became startled, and walked into the side of a building. Defendants also want to convince the jury that this man, who had nothing in his left pocket, nothing inside his waistband, no firearm, and who was wearing a belt, reached into his left pocket after he walked into a building. Then, when approached by officers, this man who had committed no crime, was not committing a crime, who did not have any warrants or tickets in his name, was not in the possession of a firearm or any illegal material, and who does not suffer from any mental heath issues, started screaming at the top of his lungs and fighting with officers. And last, the defendants want the jury to believe that a man who was believed to be armed and dangerous, who was screaming and cursing at the police and who was fighting them was politely put in handcuffs without any use of force.

Not only is this story completely outrageous, it is also highly unlikely that a jury would believe it. It is therefore believed that a jury will instead credit Gohre's story and chain of events and bring back a ruling in his favor. And, because this case is based mostly on word of mouth and conflicting testimony, it is the province of a jury to render a verdict. Therefore, the defendants are not entitled to summary judgment.

### D. Defendants are not entitled to qualified immunity

"Qualified immunity only protects government officials from liability when their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about" *Alicia v. Thomas*, 815 F.3d 291 (7th cir.)

The defendants' qualified immunity claim is just as outrageous as the story they seek to tell. (Defendants' brief in support of motion for summary judgment PG#7 paragraph #4) "...[e]ven if the court ultimately finds that the officers did not have



reasonable suspicion to stop Gohre... the officers should still be entitled to qualified immunity because... they did not violate any clearly established law." The laws that the defendants are claiming are not clearly established are clearly quoted in their brief! If the court ultimately finds that the officers did not have reasonable suspicion to stop Gohre, then Terry v. Ohio, the case quoted on page 4 of the defendants' brief in support of summary judgment, very clearly disqualifies their qualified immunity claim as Terry v. Ohio clearly states that if there is no reasonable suspicion or probable cause to make a stop then the stop would be illegal. Terry v. Ohio, Gentry v. Sevier, Henes v. Morrissey, and a plethora of others condemn officers stopping citizens without reasonable suspicion or probable cause.

But, nonetheless, Gohre was stopped without reasonable suspicion or probable cause, he was searched without his consent, he was seized, body slammed, then punched, kicked, and knelt on, then ultimately transported and ticketed. All of the defendants' actions violate clearly established law and therefore the defendants are not entitled to qualified immunity.

## IV. Conclusion.

District 5 is a gang of renegade cops who patrol the streets of Milwaukee committing all kinds of illegalities and constitutional violations. They have been the subject of hundreds of lawsuits and investigations for their known illegal searches and seizures and uses of excessive force and even wrongful deaths and have been amongst the biggest contributors to the "Pipe Line to Prison" an investigation into why Milwaukee, WI's 53206, an area heavily patrolled by district 5, led the nation in concentration of black male incarceration.

These officers violate all kinds of laws and rights and try to cover up by filing false reports. I myself have previously witnessed this first hand, e.g. incident #120510146. A gang of officers kicked in the front door of my home at 3639 n 25th street without a warrant and searched and destroyed my home and detained the occupants therein. After destroying my home and walking out without so much as a sorry, they



arrested a man walking down the street named Divonte Forbes. Divonte Forbes did not live in my home nor was he in my home. Officer Rachel Goldbeck followed up this incident by filing a fabricated incident report. In her report she says her and officers of district 5 "Went to the address of 3639 n 25th street" and "went into the basement of the location and arrested Forbes." This report is false; the only person arrested n the basement of 3639 n 25th street was me.

Outside of district 5 as a whole, officers Boyack and Milone as individuals have been the subject of multiple complaints and lawsuits for alleged illegal search and seizure and excessive force, including one incident where Milone, following a car chase, reached into the offender's car, grabbed one of the occupants by his dread locks, and began punching him in the face. Though the courts ruled this action within reason, it still shines the light on the true character of the defendant. And so, should the fact that all the lawsuits brought against the defendants were for violating the rights of African-Americans.

The fourth amendment requires that the courts condemn the actions of police officers when they search individuals for the sole purpose of discovering what that individual secretly posses. The right to be secure in one's own possession and in control of his own person, cannot be upheld if officers are let free to search and or seize individuals to discover what they "might" possess. Unseen or "concealed" possession can not be inferred absent exigent circumstance. The right to conceal carry is just that and officers do not have the right to infer, based off one's ethnicity or geographical location, that an individual does not have the right to conceal carry a weapon. Suspicion of concealed carry can ***NOT*** be the precursor to search, seize and or charge a citizen with the crime of illegally carrying a concealed weapon in a building, place, or area where concealed carry is legal. And, furthermore, officers can ***NOT*** assume, because one individual does not want another individual to know that he's carrying a concealed weapon, that that individual's carrying of a concealed weapon is illegal. For, the right to "conceal" or "keep secret" what one possesses, is the basis of the right to conceal carry a weapon and any law or ideology in opposition to that infringes upon the individual citizens rights to both bare arms and be secure against unreasonable searches and seizures. Therefore, even if the defendants' claims were true, they would still not be



entitled to qualified immunity. But, that is not the case here. Gohre's actions, or lack there of, are what defendants are depending on as reasonable suspicion to stop, seize, and search Gohre. Because there is a genuine dispute in what led up to the initial altercation, the court must dismiss defendants' motion for summary judgment. *Omnicare, Inc. v United Health Group, Inc*, 629 F.3d 697, 704-05 (7th cir. 2011) "District courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury"

Here, the plaintiff would like to present a cautionary tale:

*On 10-25-17, Gohre was doing nothing more than walking down the street enjoying a cigarette on his way to work when he was approached by Batman and Robin (officers Boyack and Milone) At this point, the only thing Gohre had done that was even remotely suspicious was be a black man in a high crime neighborhood. A combination, of course, just simmering with criminality and wrong doing. Something had to be done. In their crusade to stop crime, Boyack and Milone aggressively stopped Gohre, at least one of them having drawn a weapon and called to the rest of the justice league (the other six defendants) to help stop this obviously menacing threat to society. After using jujitsu and other forms of martial arts and various wrestling moves to apprehend this blatant threat to society, officers found out that there was in fact no threat at all. The race to justify their illegal stop, search, seizure and use of excessive force then ensued. After finding no weapons or anything illegal on Gohre's person, officers searched the area of the arrest in hopes of finding his homosapien disintegrating ray gun, but to no avail. Officers then stopped to run the plates on vehicles in the area hoping that one might have been used in a recent high profile heist that they could tie Gohre to. This also failed. When all else failed they did the only thing left for them to do. They ran Gohre's name through the wanted criminal database. It came back clean. Officer Milone then said to officer Boyack "holy uncanny photographic mental pothesis batman, this guy really isn't the joker. He's just a civilian." To which Boyack responded "Well, robin, then there's only one thing left for us to do: fabricate a police report and hope he forgets all about this. Quick, let's get him to the batcave and book him in"*



*Gohre was transported to district 5 and the officers involved in this "saturation Patrol" immediately went back to their crusade on crime. In fact, within just 54 minutes of stopping Gohre, these same officers stopped at least 9 more people, at least 8 of which were African American. All presumably suspected of no goodery in a high crime neighborhood.*

Dated this 6th day of December, 2023

*[signature]*

Demetrius Gohre
Columbia Correctional Institution
P.O. Box 900
Portage, WI. 53901-0900