UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEMETRIUS GOHRE,

    Plaintiff,

  v.            Case No. 22-C-1403

CHAD E. BOYACK, et al.,

    Defendants.

## DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  Plaintiff Demetrius Gohre is representing himself and proceeding on Fourth Amendment claims against City of Milwaukee Police Officers Chad Boyack, Anthony Milone, Eric Kradecki, Ryan Reagan, Jose Rivera, Jesse Busshardt, Kody Wetzel, and Jonathan Caya. On October 5, 2023, Defendants filed a motion for summary judgment, which the Court will deny.

## BACKGROUND

  The parties agree that Gohre was taken into custody and transported to the police station on October 25, 2017. Those may be the only facts they agree on. According to Defendants, Boyack and Milone were driving in a marked squad car when they saw Gohre walking down the street. The officers noted that when Gohre saw their car, he abruptly changed direction and grabbed his left side pants pocket. They assert that Gohre was so startled by their presence that he walked into a wall. Given this behavior, Boyack and Milone suspected that Gohre may be concealing a weapon in his pocket. They explain that they parked their car and made several attempts to contact Gohre, but he ignored their commands to stop. According to Boyack and

Milone, they were able to catch up to Gohre, who began to scream, "Do not touch me." Dkt. No. 45 at ¶¶1-6.

Boyack and Milone explain that, at that time, Kradecki, Reagan, Rivera, Busshardt, Wetzel, and Caya arrived to assist. Defendants assert that efforts were made to explain to Gohre why he was being stopped and searched, but he became combative and began to swear at the officers. Defendants explain that Reagan, Wetzel, Boyack, and Milone then tried to get control of Gohre so they could perform a pat-down search. The search revealed that Gohre had no weapons, but because Gohre continued to be combative, officers took him into custody and transported him to the police station where he was eventually issued a citation and released. Dkt. No. 45 at ¶¶7-12.

Gohre remembers his encounter with Defendants very differently. According to Gohre, Boyack and Milone were sitting in a parked squad car when he left his place of employment to buy a pack of cigarettes. After buying the cigarettes, he walked back to work with a cell phone in one hand and a lit cigarette in the other. He states that at no time did he reach for his pocket or change his direction of travel. He states that, while walking, he heard tires screech, turned his head, and noticed the police car. Gohre asserts that he did not respond because he did not think the officers were interested in him since he had done nothing wrong. Dkt. No. 50 at ¶¶1-4; Dkt. No. 51 at ¶¶1-15.

According to Gohre, Boyack and Milone pulled up alongside him and Boyack called from his window, "Can I ask you some questions?" Gohre asserts that he said no and stated he had to get back to work. He explains that Boyack then got out of his car and said something over his radio. Gohre states that, upon hearing this, he turned around and saw Boyack unholster his weapon. Gohre asserts that he told the person he was talking to on the phone that the police were going to kill him; Gohre then raised his hands in the air. Gohre explains that the other Defendants

2

approached, at which time, with his hands in the air, he said, "You don't have permission to search me." Gohre asserts that an officer picked him up from behind and threw him to the ground. He asserts that, while he was on the ground, he was handcuffed, and officers began to punch and kick him while yelling at him to stop resisting even though he was not resisting. Gohre also asserts that Boyack was kneeling on his neck. According to Gohre, when an officer yelled to the others that Gohre had not thrown anything, the officers stopped assaulting him. Gohre asserts that he was then transported to the police station where he was held for hours before being released. Dkt. No. 50 at ¶¶1-4; Dkt. No. 51 at ¶¶16-31.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

# ANALYSIS

The Fourth Amendment "prohibits unreasonable searches and seizures." *U.S. v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018). Gohre first asserts that Boyack and Milone violated the Fourth Amendment when they stopped him and sought to search him for no reason. Under the Fourth Amendment, an officer may briefly seize an individual if the officer has reasonable suspicion that the individual is engaged in criminal activity. *Id.* If a jury were to believe Gohre's version that he was merely walking back to work while talking on the phone and smoking a cigarette, the jury could not reasonably conclude that Boyack and Milone had reasonable suspicion to stop or search him. Accordingly, Boyack and Milone are not entitled to summary judgment on this aspect of Gohre's claim.

Gohre next asserts that all Defendants violated the Fourth Amendment when they used excessive force and detained him for hours, again, for no reason. According to Gohre, after informing Boyack that he did not want to talk to him, Boyack approached him with his gun unholstered, at which time Gohre raised his hands in the air. Gohre asserts that another officer threw him to the ground and officers began to punch and kick him while Boyack kneeled on his neck. Gohre asserts that at no time did he resist, swear at officers, or become combative. No jury that believes Gohre's version could reasonably conclude that Defendants' actions were "objectively reasonable in light of the facts and circumstances confronting them . . . ." *Graham v. Connor*, 490 U.S. 386, 397 (1989). In fact, given Gohre's assertions that he did not resist once he raised his hands, *no* force used against him could be characterized as reasonable. Similarly, given that Gohre had no warrants and no weapons, a jury who believes that Gohre was not combative and did not resist officers' efforts to control him could not reasonably conclude that Defendants had probable cause to detain him for hours prior to issuing him a citation or that doing so was

4

reasonable. *See U.S. v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (noting that, "[g]enerally, seizures are 'reasonable' only when they are based on probable cause"). Accordingly, Defendants are not entitled to summary judgment on this aspect of Gohre's claim.

Nor are Defendants entitled to a finding of qualified immunity on Gohre's claims. The general standard for liability under the Fourth Amendment for stopping, searching, and seizing individuals was well established at the relevant time. "The purpose of the doctrine of qualified immunity is to shield public officers from liability consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it." *Walker*, 293 F.3d at 1040. There is no question that if Gohre and Defendants conducted themselves in the manner Gohre asserts, Defendants' actions would have violated the Fourth Amendment. *See Payne v. Pauley*, 337 F.3d 767, 776-81 (7th Cir. 2003) (holding that fact questions precluded summary judgment on issue of qualified immunity).

One final note: In their reply brief Defendants argue that Gohre's uncorroborated testimony is insufficient to defeat a summary judgment motion. They point out that Gohre has offered no evidence other than his own self-serving statements, which he declared under penalty of perjury were true and correct. Defendants' argument is curious given that the only evidence they offer in support of their motion is Boyack and Milone's statements. They do not explain why their version of what happened is sufficient when Gohre's is not. Gohre's "account is not based on speculation, intuition, or rumor. [He] has submitted a very detailed factual account of the incident based on [his] first-hand experience with [Defendants]. Those facts conflict with the facts presented by [Defendants]. Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied." *Payne*,

5

Case 1:22-cv-01403-WCG    Filed 04/11/24    Page 5 of 6    Document 56

337 F.3d at 773. Of course, had Defendants been wearing body-cameras or captured the events on police squad dash-cameras, the factual dispute could likely be resolved without a trial. But no such evidence has been offered. Defendants' motion for summary judgment (Dkt. No. 43) is therefore **DENIED**.

## NEXT STEPS

Gohre's claims against Defendants will proceed to trial. Given the difficulty a lay person is likely to experience in trying a case to a jury, the Court will attempt to recruit stand-by counsel to assist Gohre in presenting his case. Counsel's role will not be to conduct pretrial discovery, but to assist Gohre in offering a coherent opening statement and closing argument, presenting and examining witnesses, and advising him on jury instructions and the form of the verdict. In the event Gohre is able to retain his own attorney to represent him, the Court will consider a request to reopen discovery. Given the age of the case, however, the Court will proceed to set this case for trial without further delay. The Clerk is directed to set the matter on the Court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 11th day of April, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
